Good morning, your honors. My name is Knute Johnson and I represent defendant appellant Jeffrey Mitchell. Your honors, the appellant was arrested on September 20th, 2007 at his home in Michigan. He was then ordered to go thousands of miles from his home to be tried with all the evidence back at his home in Michigan on what the government now has described as a defective indictment. During the trial on the defective indictment, the government comes very close to agreeing that his confrontation rights were denied. Other criminal conduct was introduced because he denied an element of the offense and his testimony was interrupted so that the government could impeach him before he finished. And it is our contention, your honor, that that trial was unfair, that it affected the public perception of the judiciary and it, in all respects, deserves a reversal. And I divided the case up into three really substantive issues and one catch-all issue that is the cumulative error, but they all tie into each other. As to the venue, your honor, there is, you know, there's of course two ways that an appellant could have attacked venue. He could have brought a Rule 21 motion before trial asking the court to change venue back to Michigan and trial counsel failed to do so and brought it up instead as a Rule 29 motion to close the government's case. Whichever way you go on that, it wasn't challenged, but even if it had been challenged, because this is a conspiracy and part of the overt acts took place in Southern District of California, why wouldn't venue be proper in any event? Well, I've contested that first on the facts, your honor, is that there was a conspiracy existing when Smith... Well, that's the allegation of the indictment, right? Well, that is an allegation of the indictment, but the indictment doesn't allege that the shipping occurred to San Diego and thereby created venue. As the government has pointed out, the indictment does not correctly address venue. Well, do you have to include venue in every indictment other than the usual in California and elsewhere or in Alaska and elsewhere? Well, you know, that's the position the government has taken in this case. Well, but, you know, I'm asking you. Does the government have to do that? They have to allege in general venue, and I think that in a conspiracy case, it has to be more specific. But that's really a side note to the fact that your honor is correct. In a conspiracy case, venue can be found in any district where an overt act occurred. And in this case, the co-conspirator, or what I have argued what later became a co-conspirator, Smith, sent some package to San Diego on one occasion. Probably 99.9% of all the other acts in this case occurred in either Michigan or Maryland or through the mails to other areas and out of the country. Really, the principally important evidence in this case, for instance, the Lavandy House that becomes so important in the Confrontation Clause analysis, that was back in Michigan, as well as the witness who testified and thereby violated the appellant's confrontation rights over the phone. He was back in Michigan. Everything was back in Michigan except, of course, for the trial, which even if you can say that technically there is venue in this case in San Diego, that's why I raised the issue that because it's so attenuated, it violated the due process clause in this case. And I know your honors know this, but I love this fact because I learned it preparing for this case, but venue is the only provision in the Constitution that is both in the Bill of Rights and in the original Constitution. It's the only criminal justice provision that is in both the original Constitution and the Bill of Rights that were separated by 15 or 25 years. It's because the founding fathers found it so important that a trial be near where a person could defend it. And because allowing the government to try someone thousands of miles or hundreds of miles at that time, from where they live, from their family and support and from the evidence, would allow government overreaching and would allow really misconduct by the government. I'm not accusing the government of misconduct here, but it would create a situation that's so unfair that it becomes very difficult to defend. What was the problem? Were there witnesses that weren't called because of problems with travel? What was the problem? Precisely. In the middle of appellant's testimony, and this is in the Confrontation Clause issue, the appellant was testifying in his own defense, denying all the elements, denying that the government's correct. There's a lot of evidence in this case that pointed to guilt, but he took the stand and disputed all of it. In the middle of his testimony, the court, over appellant's trial counsel's objection, put a stop to appellant's testimony and allowed a witness to testify to rebut appellant. And that witness testified over the telephone from Michigan, where the case should have been tried. That confrontation violation would not have occurred if this case had been tried in Michigan. That's absolutely clear because that's where the witness was. And that goes to the heart, not only of the venue issue and the Confrontation Clause issue, but the cumulative error issue. I mean, I don't think the government disputes that there was a Confrontation Clause error in this case. But in this particular case, I guess the real question, it's unusual to do this, obviously. But the issue is whether there's harmless error here. And as I look at it, the testimony on the phone by Livandini, is that the way you say it? I don't know. I pronounce it Livandy, but I have no idea. Okay, I get it, Livandini, whatever it is. Smith had already testified that Mitchell had rented the Struan Road apartment. It was equivocal because Livandini testified that Mitchell rented the apartment, but he also indicated that he eventually met some of Mitchell's relatives and on and on and on. I've got several different notes here that suggest that although it is unusual, the reality is all of the testimony that came in as a result of the telephonic presentation was cumulative. It didn't really change anything. There was plenty of evidence as to each of the things that were testified to had that never occurred. And I will have to respectfully disagree with Your Honor on that point. And the reason is this, is that the government's closing argument addressed that issue and said that house was being used to manufacture steroids. That was their whole theory of the case. And the day before Livandini or Livandy, however it's pronounced, testified, Appellant's brother testified and said, no, I was living in that apartment. My brother rented it for me because I had bad credit. And then that very day, you can tell from the record, the government had a DEA agent go out and interview the landlord, and then they had him testify the next day. And that they used that to argue that the appellant was lying, that he was actually manufacturing steroids in that apartment. And that went to the heart of his credibility. And that's why I don't think you can say, well, there was a lot of evidence, so really what's the problem? Or that it's cumulative, what's the problem? It's not. Any time a person testifies, it becomes that person's testimony versus the government. But that's true of the other evidence that was placed in the record as well, is it not? Yes. I mean, anything that goes in the trial that is contrary to what Mr. Mitchell said is to that degree contradictory and it weighs on credibility. I agree, Your Honor. And what made matters even worse was breaking up the appellant's testimony to impeach him in the middle of his testimony. In effect, you know, allowing the government to put a stop to the proceeding and throw someone on to argue later that person's lying, and it just highlights the unfairness of the proceedings and the unfairness of the impeachment with the witness over the phone. And again, I know I keep beating this horse, but this is a live horse. We talked about a dead horse earlier. This one's live. What color is the horse? Well, in my respect, it's black and white, obviously. And I think I've confronted or discussed the confrontation issue fairly thoroughly here, but I did want to mention Rodriguez-Lara, and that is the case cited by the government. It's 421F3rd at 948. That case found plain error, and it's not harmless in this case, of course, Your Honor. It's a plain error analysis. In that case, the Ninth Circuit found plain error because the records show that the appellant was being punished for exercising his right, and that affected the fairness, integrity, or public perception of that trial. In this case, I believe that the fairness, integrity, and public perception of this case was, in fact, impaired by this because, first off, the confrontation clause issue could not have been more obvious, and the fact that trial counsel only managed to say objection, obviously, could be the subject of a different proceeding along the line because it changes the analysis by this court, but the district court should have spotted that. The prosecutor should have spotted that. Everyone should have spotted that because, as the Supreme Court has pointed out over and over again, and I'm going to quote from Poynter v. Texas, we have never doubted, therefore, that the confrontation clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact. And in Poynter v. Texas, the court again says, this opinion is embellished with references to and quotations from antiquity, in part to convey that there is something deep in human nature that regards face-to-face confrontation between accused and accuser as essential to a fair trial in a criminal prosecution. I think it was an extremely obvious error. The issue is whether it's harmless or not. Right. Well, I've argued in my brief that it's not harmless, and I'm arguing here that it was, in fact, plain error. Either way, it directly affected the client, the appellant's testimony. It impeached him. It said, you're lying right here. And then, but he couldn't confront it. And because the defendant testified, and the government points this out, they said in their 404B analysis that once the appellant testified, it changed everything, and it put his intent in issue. Four square for everyone. And that's why I believe the government worked so quickly to run back to Michigan and to get that witness and to put him on over the phone, broadcast to the jury, rather than face-to-face. That, because the defendant denied all the charges, I don't think the court can say, you know, this is harmless. You know, there was a lot of evidence, and the jury would have convicted him anyway. I'm going to save a couple minutes. Absolutely. Good morning. Kyle Hoffman for the United States. I'd like to take up the topics in order that came in the briefs and try to touch on some points. What about this telephonic testimony? Your Honor, here's what I would suggest. I'm conceding that it was error in the sense of, I don't think in the absence of strict procedures that were Marilyn versus Craig or explicit agreement of counsel, I don't think it's proper to have telephonic testimony. Yeah, that's right. It shouldn't have done it. It was wrong, and then it went in in the middle of the defendant's direct examination. Now, I agree. That's obviously what happened. No, it shot an arrow into him. But I would suggest, I've talked to trial counsel about how this was. Well, why did they do that? Right. Understand, this is not from the record. This is from my conversations with trial counsel. I want to preface my response with that. But as I understand it, the brother testified about who was actually renting the apartment. The government, as Mr. Johnson indicated, went out and contacted Mr. Libidini and subpoenaed him. And as I understand it, again, this is from trial counsel, Mr. Libidini was an elderly man and had a daughter who was a police officer and said, no, no, no, no, he shouldn't be coming to San Diego. And as I understand it, again from counsel, was the daughter called the trial court. And that's what happened. Now, we're dumping, in a sense, on the government. Who was the trial judge? Judge Huston, who's a very thoughtful, experienced, he was an AUSA on the civil side. He may not have been as attuned to the Confrontation Clause issue because he practiced a lot civilly, but the idea that it was kind of a plot against the defendant in terms of fairness, I think, is just not right. There was no objection by defense counsel to the Confrontation Clause issue at that time, was there? That's correct. Okay. Now, again, as I understand it, there may, you know, trials are oftentimes, a lot of things are happening at once and things get a little confusing. As I understand it, trial counsel thought there was an agreement for somebody to testify telephonically. It may be the case that the trial counsel for the defense thought it was the chemist and that the government thought it was Mr. Lividini or thought that if they agreed to one, they would agree to another. All of those things could be going on at once. So while I'm saying it's error, I'm also saying it's understandable. It's like these trials before IJs. Sometimes nobody knows what's going on. Do you agree to that? I agree, but I would also agree that everybody's trying to do their best and is actually doing their best by their lights, and I think that's what happened here. Now, as far as the interruption, I mean, to me, a lot of that is the discretion of the trial court in terms of scheduling trial and so on, and that I don't think was really the thrust of the objection. It was a confrontation clause objection. Now, having said all that, I would suggest that whether it's plain error, whether it's the government's burden to show it was a harmless error beyond a reasonable doubt, that's met, I would suggest, more than amply. In a sense, I apologize to the court for providing so much in the supplemental excerpts of record, but in another sense, I could do nothing else. It's a question of harmless error. Mr. Johnson, as is his right, chose to just provide the citations to the trial transcripts, and so I thought the court ought to see and really see the evidence against Mr. Mitchell, and there was a lot. I won't belabor that. What I will say is this. It took the jury. They got the case on Friday afternoon at 1 p.m. They returned the verdict Monday morning at 9.30 after an eight-day trial with a lot of evidence. I'd also say, and I'm picking up a comment of Mr. Smith, which is that the Lividini testimony was, if anything, it was used more ably by a defense counsel than it was by the government. The government didn't mention it in its opening closing, and then Mr. Peterson, the trial counsel, said, hey, that testimony supports Mr. Mitchell's view. The brother was there. The brother paid the rent sometimes, and then Mr. Coughlin for the government tried to make a couple comments about, oh, no, the truck was there. Mr. Mitchell signed up in the first instance. So it was a wash, and the best way to understand that it's a wash, I think, was captured by Mr. Lividini's comments himself. When he was done with his testimony, that's it. That was his comment. It was just not that big a deal, is my suggestion. I take it there was a question mark after that's it? There was. Now, as far as the venue issue is concerned, I don't lay a lot of emphasis on the defect in the indictment. I mean, I think it's arguable whether it was defective or not. I do know that given these particular charges, you don't have to allege an overact in the indictment, and you don't have to allege venue in the indictment, and that leads to a little bit of a problem because to establish venue in conspiracy cases, one of the rules is wherever there was an overact and furtherance of the conspiracy, and the Supreme Court has recognized that in the, I think it's the Whitfield case, that that's just how it is. So here, the reason I bring up the indictment is that the claim that it was unfair to have the trial in San Diego, I think would make more sense if there was a lot of objection beforehand. If there was a motion, everything's back in Michigan, for the convenience of all the parties or for fairness, it needs to be back in Michigan. It would make more sense to complain about the fairness. I don't think that fairness really was an issue. I think it was essentially a litigation gambit. We'll wait. We'll see, and we'll try to get this under Rule 29. Okay. Now, the rule, I mean, I think venue was clearly established here. I think the district court made an explicit finding about when the conspiracy began and when the overacts, both for the, well, he relied on the drug transaction, but I think there was also a money laundering transaction immediately after the agreement. I've tried to cite that in my briefs, and I don't want to belabor any points and beat any dead horses or live ones for that matter. Unless the court has additional questions, I would submit. Your horse is waiting for you. Okay, thank you. I need to get back to San Diego. Your Honor, there's a couple of quick issues. I'm certainly not arguing that there was a plot to make the trial unfair, but it's like kicking a sleeping dog. You know, some people say, well, the dog knows if you kicked it out of accident or meanness, but in a trial it doesn't matter why you kicked it. If it's unfair, it's unfair. Absolutely. I'd like to try to get the court off of the asylum cases and see if there's anything more. Well, use something other than a dog. I'm sorry. Your Honor asks about the objection to the confrontation issue. How about kicking a sleeping Maoist? Well, I try to avoid that, too. But the trial counsel, when he heard about this witness, did say, I object. That's on page 1044. He didn't say, I object, that violates the confrontation clause. He used the words, I object. The court just engaged in a colloquy with counsel for the government about the parties to this case doing their best and that we did have a thoughtful judge and everyone was doing their best to get it done. But this is federal court. I think we expect more than people doing their best. I think we expect people to act competently and to protect the citizen's rights. And this citizen's right was not protected for the confrontation clause. And that goes directly to the plain error analysis of the public perception. And if you summarize this case. You know you spent a lot of time on this subject. We have it well in hand. Then I will submit it, Your Honor. But you're the first guy that I ever remember that has oral argument on computers. I think you'll see more of that. It's easier. Actually, I was going to read to you from the transcript, which is right here, too, but I won't do that either. Thank you. You're welcome. That's fine. Just leave your computer here.
judges: Holland, Pregerson, Smith M.